**2023 IL 128468**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 128468)

JAMIE LICHTER, Appellee, v. KIMBERLY PORTER CARROLL, as
Special Administrator of the Estate of Donald Christopher, Deceased, Appellant.

*Opinion filed October 26, 2023.*

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville and O'Brien concurred in the judgment and opinion.

Justice Rochford dissented, with opinion, joined by Justice Overstreet.

Justice Holder White took no part in the decision.

**OPINION**

¶ 1       On January 19, 2018, the plaintiff, Jamie Lichter, filed a personal injury action in the circuit court of Cook County against Donald Christopher for injuries she

suffered in a car accident on February 27, 2016. Unknown to the plaintiff at the time, Christopher had passed away on June 12, 2017. An estate was never opened for Christopher following his death.

¶ 2    On April 23, 2018, the plaintiff filed a motion pursuant to section 2-1008(b) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1008(b) (West 2018)) to appoint Kimberly Porter Carroll as the special representative of Christopher's estate for the purpose of defending the lawsuit, which the circuit court granted. The plaintiff subsequently filed an amended complaint, naming Porter Carroll as the special representative of Christopher's estate and the defendant in the case. Eventually, counsel for Christopher's insurer, State Farm, appeared on behalf of the defendant.

¶ 3    On March 3, 2020, the defendant, now represented by State Farm, filed a motion to dismiss the plaintiff's complaint pursuant to section 2-619(a) of the Code (735 ILCS 5/2-619(a) (West 2020)), arguing that the action was time barred. The defendant asserted that the plaintiff never moved to appoint a personal representative of Christopher's estate prior to the statute of limitations expiring, as she was required to do pursuant to section 13-209(c) of the Code (735 ILCS 13-209(c) (West 2020)). The circuit court granted the defendant's motion and dismissed the case with prejudice.

¶ 4    The plaintiff appealed, and the appellate court reversed the circuit court's order. 2022 IL App (1st) 200828. The appellate court held that, because an estate was never opened for Christopher and there was no personal representative to defend the lawsuit, the plaintiff acted properly in moving to appoint a special representative pursuant to section 13-209(b)(2) of the Code (735 ILCS 13-209(b)(2) (West 2018)). 2022 IL App (1st) 200828, ¶ 46. For the following reasons, we affirm the judgment of the appellate court.

¶ 5                                  BACKGROUND

¶ 6    On February 27, 2016, the plaintiff's car was rear-ended by a car driven by Christopher. On January 19, 2018, the plaintiff filed a personal injury complaint against Christopher. Shortly after filing her complaint and after the two-year statute of limitations had expired, the plaintiff learned that Christopher had passed away on June 12, 2017. No letters of office were ever issued to open an estate on

Christopher's behalf, and thus, there was no personal representative to defend the lawsuit.

¶ 7        On April 23, 2018, the plaintiff filed a motion to appoint a special representative for Christopher's estate pursuant to section 2-1008(b) of the Code (735 ILCS 5/2-1008(b) (West 2018)). The trial court granted the plaintiff's motion. The plaintiff then filed an amended complaint naming Porter Carroll as the special representative and the defendant in the case. Subsequently, counsel for Christopher's insurer, State Farm, filed an appearance on behalf of Porter Carroll.

¶ 8        On March 3, 2020, the defendant filed a motion to dismiss the plaintiff's amended complaint pursuant to section 2-619(a) of the Code (735 ILCS 2-619(a) (West 2020)). The defendant's motion argued that section 13-209(c) of the Code required the plaintiff to move to appoint a *personal representative* of Christopher's estate, which she failed to do when she moved to appoint a *special representative* and thus her action was now untimely.

¶ 9        The trial court granted the defendant's motion and dismissed the plaintiff's amended complaint. In its written order, the trial court stated:

"The Code of Civil Procedure requires that a personal representative serve as the placeholder for a defendant who died without the plaintiff's knowledge prior to filing suit. In this case, the plaintiff named instead a special representative, and the statute of limitations for naming a personal representative has expired. The plaintiff's error compels this court to grant the defendant's motion and dismiss the case with prejudice."

¶ 10        The trial court's order noted that there are "dueling subparagraphs" in section 13-209, subsection (b) and subsection (c), which provide:

"(b) If a person against whom an action may be brought dies before the expiration of the time limited for the commencement thereof, and the cause of action survives, and is not otherwise barred:

(1) an action may be commenced against his or her personal representative after the expiration of the time limited for the commencement of the action, and within 6 months after the person's death;

- 3 -

(2) if no petition has been filed for letters of office for the deceased's estate, the court, upon the motion of a person entitled to bring an action and after the notice to the party's heirs or legatees as the court directs and without opening an estate, may appoint a special representative for the deceased party for the purposes of defending the action. If a party elects to have a special representative appointed under this paragraph (2), the recovery shall be limited to the proceeds of any liability insurance protecting the estate and shall not bar the estate from enforcing any claims that might have been available to it as counterclaims.

(c) If a party commences an action against a deceased person whose death is unknown to the party before the expiration of the time limited for the commencement thereof, and the cause of action survives, and is not otherwise barred, the action may be commenced against the deceased person's personal representative if all of the following terms and conditions are met:

(1) After learning of the death, the party proceeds with reasonable diligence to move the court for leave to file an amended complaint, substituting the personal representative as defendant.

(2) The party proceeds with reasonable diligence to serve process upon the personal representative.

(3) If process is served more than 6 months after the issuance of letters of office, liability of the estate is limited as to recovery to the extent the estate is protected by liability insurance.

(4) In no event can a party commence an action under this subsection (c) unless a personal representative is appointed and an amended complaint is filed within 2 years of the time limited for the commencement of the original action." 735 ILCS 5/13-209(b), (c) (West 2020).

¶ 11 Relying upon *Relf v. Shatayeva*, 2013 IL 114925, the trial court rejected the plaintiff's argument that subsection (b)(2) applies to the facts of this case and instead found that subsection (c) is the relevant authority because the plaintiff did not learn of Christopher's death until after the statute of limitations had expired. As such, the trial court found that the plaintiff was required to timely appoint a personal

- 4 -

representative of Christopher's estate to defend the lawsuit. The trial court explained:

> "Subsection (c) applies in those instances in which a lawsuit is filed without the plaintiff knowing of the defendant's death and learns of the death after the statute of limitations expired. *** *Relf* forecloses subsection (b)(2) to a plaintiff who does not know of a defendant's death ***."

¶ 12    The trial court's order stated that the plaintiff had the option to move to appoint a personal representative of Christopher's estate, but she failed to do so within the statute of limitations period, which expired February 27, 2020, pursuant to section 13-209(c)(4) of the Code. 735 ILCS 5/13-209(c)(4) (West 2020) (an amended complaint must be filed against the personal representative within two years of the time limited for the commencement of the original action). Accordingly, the trial court dismissed the case with prejudice.

¶ 13    The plaintiff appealed, and the appellate court reversed the trial court's order. 2022 IL App (1st) 200828, ¶ 48. In so ruling, the appellate court rejected the defendant's argument that subsection (c) affects subsection (b)(2), as subsection (b)(2) "stands separate and apart." *Id.* ¶ 28. The appellate court explained:

> "If defendant is right, then *Relf* stands for the proposition that, if a plaintiff does not learn of a defendant's death until after the limitations period has expired, that plaintiff must open an estate, get a personal representative appointed, and sue that personal representative. The new option of suing a special representative, created in 1997 for situations where no estate has been opened, would be strictly limited, in defendant's mind, to situations where the plaintiff knows of the defendant's death before the limitations period has expired. The trial court read *Relf* that way, too, though the trial court found that interpretation of subsection (b) 'troubling.'
>
> We do not read *Relf* as holding anything so extreme." *Id.* ¶¶ 37-38.

¶ 14    The appellate court concluded that *Relf* simply stood for the proposition that, if letters of office have been issued and thus a personal representative of the estate has been appointed, that personal representative must be the party sued. *Id.* ¶ 38. The court further held that "nothing in the language of subsection (c) suggests that

a plaintiff must name the *personal representative* when the option of appointing a special representative is available under subsection (b)(2)." (Emphasis in original.) *Id.* ¶ 28. Since there was no personal representative of Christopher's estate, the appellate court held that the plaintiff was well within her rights to elect the option of moving to appoint a *special representative* pursuant to subsection (b)(2). *Id.* ¶ 46. Thus, the appellate court reversed the trial court's ruling on those grounds and remanded the case to the trial court for further proceedings. *Id.* ¶ 48.

¶ 15 This court granted the defendant's petition to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021). We also allowed the Illinois Trial Lawyers Association and the Illinois State Bar Association leave to file an *amicus curiae* brief in support of the plaintiff's position. Ill. S. Ct. R. 345(a) (eff. Sept. 20, 2010).

¶ 16 ANALYSIS

¶ 17 At issue is the interpretation of section 13-209. More precisely, we are asked to determine whether, under the facts of this case, the plaintiff was entitled to move to appoint a *special representative* pursuant to section 13-209(b)(2) instead of a *personal representative* pursuant to section 13-209(c).

¶ 18 The primary goal of statutory construction is to ascertain and give effect to the intention of the legislature. *Home Star Bank & Financial Services v. Emergency Care & Health Organization, Ltd.*, 2014 IL 115526, ¶ 24. The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. *Id.*

¶ 19 Section 13-209 of the Code, known as the "Death of Party" statute, governs the procedures for causes of action brought by or against deceased parties. 735 ILCS 13-209 (West 2016). The statute was amended in 1997 to add subsection (b)(2), which added the term "special representative" for the first time. *Relf*, 2013 IL 114925, ¶ 35; see Pub. Act 90-111 (eff. July 14, 1997) (adding 735 ILCS 5/13-209(b)(2)). Prior to that amendment, section 13-209 only provided for actions against " 'personal representatives.' " *Relf*, 2013 IL 114925, ¶ 35; see 735 ILCS 5/13-209(b), (c) (West 1996). As the appellate court noted, the purpose of the amendment was to create a mechanism that allows the plaintiff to streamline the process and avoid the time and costs of opening an estate in the probate court in a cause of action where the defendant has died. 2022 IL App (1st) 200828, ¶ 18; see

90th Ill. Gen. Assem., House Proceedings, Mar. 13, 1997, at 49 (statements of Representative Lang).

¶ 20      The plain language of subsection (b)(2) provides that, if a defendant dies before the statute of limitations period has run and no estate has been opened for the deceased defendant and there is no *personal representative*, the plaintiff may move to appoint a *special representative* to defend the lawsuit. 735 ILCS 13-209(b)(2) (West 2020) ("if no petition has been filed for letters of office for the deceased's estate, the court, upon the motion of a person entitled to bring an action *** may appoint a *special representative* for the deceased party for the purposes of defending the action" (emphasis added)). By its plain language, subsection (b)(2) applies here, since Christopher died before the limitations period ran, no estate was ever opened for Christopher, and there was no personal representative in place to defend the plaintiff's lawsuit.

¶ 21      However, the defendant argues that, because the plaintiff learned of Christopher's death *after* the statute of limitations expired, subsection (c) applies here. 735 ILCS 13-209(c) (West 2020) ("If a party commences an action against a deceased person whose death is unknown to the party before the expiration of the time limited for the commencement thereof, *** the action may be commenced against the deceased person's personal representative ***."). More specifically, the defendant argues that subsection (c) is the *only* applicable subsection in this case and that it forecloses the plaintiff from seeking the appointment of a special representative under subsection (b)(2).

¶ 22      We disagree. The plaintiff learned of Christopher's death *after* the statute of limitations expired, and thus, subsection (c) is available to her. Yet that does not mean that subsection (c) *must* apply or that the plaintiff was *required* to seek the appointment of a personal representative. Stated another way, there is nothing in the plain language of the statute to indicate that subsection (c) imposes a requirement to the exclusion of subsection (b)(2) when it is available. Notably, both subsections contain the word "may," confirming that either option is available to the plaintiff for her choosing and one subsection does not preclude the use of the other. See *Krautsack v. Anderson*, 223 Ill. 2d 541, 554 (2006) ("the word 'may' ordinarily connotes discretion").

¶ 23　　　　In arguing that subsection (c) requires the plaintiff to appoint a personal representative because the plaintiff learned of Christopher's death after the statute of limitations expired, the defendant relies heavily upon *Relf*. In *Relf*, the plaintiff filed a personal injury complaint against the defendant, who, unknown to the plaintiff at the time of filing, was deceased. *Relf*, 2013 IL 114925, ¶ 1. By the time the plaintiff had filed her action, the defendant's will had been admitted to probate, and letters of office had been issued to his son to serve as independent administrator of his estate. *Id.* The plaintiff subsequently moved the trial court to appoint a " 'special administrator' " of the defendant's estate for the purpose of defending her lawsuit. *Id.* ¶ 8. The trial court granted the plaintiff's request, appointed the special administrator, and allowed the plaintiff to file an amended complaint against the special administrator as the defendant. *Id.* ¶ 10. The special administrator then moved to dismiss the lawsuit as time barred, which the trial court granted. *Id.* ¶ 18.

¶ 24　　　　This court affirmed the trial court's dismissal of the plaintiff's lawsuit because the plaintiff was required to sue the personal representative. *Id.* ¶¶ 2, 46. In so doing, we examined the differences between subsections (b) and (c) of section 13-209:

> "The provisions of section 13-209(b) presuppose that the plaintiff is aware of the defendant's death at the time he or she commences the action. A separate set of requirements apply where, as in this case, the defendant's death is not known to [the] plaintiff before expiration of the limitations period and, unaware of the death, the plaintiff commences the action against the deceased defendant directly. This scenario is governed by section 13-209(c) [citation]. Assuming that the cause of action survives the defendant's death and is not otherwise barred, section 13-209(c) permits a plaintiff to preserve his or her cause of action by substituting the deceased person's 'personal representative' as the defendant." *Id.* ¶ 27.

¶ 25　　　　The defendant here focuses on our language that subsection (b) "presuppose[s] that the plaintiff is aware of the defendant's death at the time he or she commences the action." Based on this language, the defendant argues that this court has already ruled that subsection (b) only applies to a plaintiff who is aware of the defendant's death when the action is filed. Since that did not occur here, the defendant maintains that the plaintiff could not seek the appointment of a special representative.

¶ 26 We agree with the appellate court that the defendant is reading *Relf* far too broadly. In *Relf*, an estate had been opened for the deceased defendant, and thus, there was a personal representative in place to defend the lawsuit. Consequently, the issue of appointing a special representative pursuant to subsection (b)(2) was not addressed by this court, and we did not examine the language of subsection (b)(2) as we are now doing in this appeal.

¶ 27 There is nothing in the plain language of subsection (b)(2) to suggest that it applies only in those situations where the plaintiff is aware of the defendant's death at the time the action is filed. We are not free to add such a limitation to the plain language of the statute. See, *e.g.*, *People v. Shinaul*, 2017 IL 120162, ¶ 17 (we will not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that the legislature did not express).

¶ 28 Further, the defendant does not persuasively explain why a plaintiff who is aware of a defendant's death at the time the action is filed and *before* the statute of limitations expires may move to appoint a special representative, but a plaintiff who learns of a defendant's death *after* the statute of limitations period has expired must move to appoint a personal representative through the probate court. It is not in dispute that subsection (b)(2) was enacted to streamline the court process when there is no personal representative in place to defend the lawsuit. Reading section 13-209 as the defendant urges us to do would defeat that purpose. See *McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511, ¶ 18 ("in construing a statute, the court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another").

¶ 29 We decline to read subsection (b)(2) as the defendant proposes. We hold that subsection (b)(2) is *not* limited to those situations where the plaintiff is aware of the defendant's death at the time he or she commences the action and before the statute of limitations expires.

¶ 30 Finally, citing *Richards v. Vaca*, 2021 IL App (2d) 210270, the defendant argues that, even if subsection (b)(2) applies and entitles the plaintiff to move to appoint a special representative, she nonetheless failed to comply with subsection (b)(2) because she did not move to appoint the special representative within six months of Christopher's death. In *Richards*, the appellate court noted that

subsection (b)(2) does not contain a time limitation. *Id.* ¶ 16. Concerned that, in the absence of any time limitation, actions could be filed in perpetuity, the court incorporated the limitation period from subsection (b)(1) into subsection (b)(2). *Id.* ¶ 19. Subsection (b)(1) states that a personal representative may be appointed "after the expiration of the time limited for the commencement of the action, and within 6 months after the person's death." 735 ILCS 13-209(b)(1) (West 2020); see *Richards*, 2021 IL App (2d) 210270, ¶ 19. The appellate court concluded that, "since the special representative takes the place of the personal representative, such an appointment, if it happens after the limitations period, must occur within six months of the defendant's death." *Richards*, 2021 IL App (2d) 210270, ¶ 21.

¶ 31    It was error for the appellate court in *Richards* to impose the time limitation from subsection (b)(1) into subsection (b)(2). Although subsection (b)(1) does not explicitly state that it applies to situations where the plaintiff learns of the defendant's death prior to the statute of limitations expiring, it can be inferred as such, considering that the purpose of subsection (c) is to provide for a plaintiff to move forward against a personal representative when he or she learns of the defendant's death *after* the expiration of the statute of limitations. 735 ILCS 13-209(b)(1), (c) (West 2020). Notably, subsection (c)(4) requires an amended complaint to be filed against the personal representative within two years "of the time limited for the commencement of the original action." 735 ILCS 13-209(c)(4) (West 2020). It can be presumed that the legislature provided an additional two years to give a plaintiff a reasonable amount of time to proceed with the lawsuit even though he or she learned of the defendant's death after the statute of limitations expired.

¶ 32    Further, applying subsection (b)(1)'s time limit of six months within the defendant's death to a situation where the plaintiff does not learn of the defendant's death until after the limitations period expired would be nonsensical and unjust. Case in point in the instant matter: Christopher died in June 2017, and the statute of limitations expired in February 2018, *more than six months after his death*. Applying subsection (b)(1)'s time limit to these facts would *shorten* the limitations period. Moreover, it would leave the plaintiff without any recourse other than to appoint a personal representative through subsection (c), which we have already explained is not what the legislature intended. See *Home Star Bank & Financial*

*Services*, 2014 IL 115526, ¶ 24 (in determining legislative intent, we presume that the legislature did not intend absurd, inconvenient, or unjust consequences).

¶ 33　　We share the concern with the *Richards* court about an indefinite time limit for a plaintiff to move to appoint a special representative. See *Richards*, 2021 IL App (2d) 210270, ¶ 15 (to read subsection (b)(2) literally, "if no personal representative exists, a court has unlimited time to appoint a special representative, but the special representative may not be sued"). However, as we have now ruled that subsection (b)(2) is available to plaintiffs who learn of the defendant's death after the limitations period and that a special representative simply takes the place of a personal representative, it naturally follows that the time limit set forth in subsection (c) applies to a plaintiff proceeding under subsection (b)(2) who has learned of the defendant's death after the limitations period has run. Thus, we hold that a plaintiff moving to appoint a special representative pursuant to subsection (b)(2) must do so within two years "of the time limit[ ] for the commencement of the original action." See 735 ILCS 13-209(c)(4) (West 2020). As the plaintiff in the instant matter did so, she was not time barred.

¶ 34　　We emphasize that the appointment of a special representative is not automatic; a plaintiff must move the court to appoint a special representative. This allows the court to balance all the relevant considerations, including notice to any heirs and the timing of the filings. The trial court can then decide within its discretion if appointing a special representative is appropriate.

¶ 35　　In this case, the trial court ultimately concluded that it was improper to appoint a special representative because subsection (c) controls, which requires the naming of a *personal representative*. However, we have explained that the plaintiff was entitled to name a *special representative* pursuant to subsection (b)(2) because there was no personal representative of Christopher's estate. Having carefully reviewed the record, we find no error in the trial court's original appointment of the special representative. The trial court therefore erred in dismissing the plaintiff's lawsuit on the basis that she was required to name a personal representative. We accordingly affirm the appellate court's order reversing the trial court and remanding the case to the trial court to be reinstated and for further proceedings.

¶ 36                                    CONCLUSION

¶ 37        For the foregoing reasons, we affirm the judgment of the appellate court.


¶ 38        Appellate court judgment affirmed.

¶ 39        Circuit court judgment reversed.

¶ 40        Cause remanded.


¶ 41        JUSTICE ROCHFORD, dissenting:

¶ 42        "We must interpret and apply statutes in the manner in which they are written
and cannot rewrite them to make them consistent with our own idea of orderliness
and public policy." *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 406
(2010).

¶ 43        I am completely sympathetic to the result reached by my colleagues. Ideally, a
plaintiff should be able proceed against a special representative whenever an estate
has not been opened for the defendant. However, we are constrained to interpret
and apply the statute enacted by the legislature, not the one we may wish the
legislature had enacted. If I believed it were possible to read the statute in such a
manner as to reach the majority's result, I would not hesitate to join its opinion.
Unfortunately, I believe that the plain language of the statute forecloses the
majority's result. I am therefore unable to join its opinion.


¶ 44                                I. Statutory Language

¶ 45        The majority begins its analysis with the premise that, if we look at the plain
language of section 13-209(b)(2) (735 ILCS 5/13-209(b)(2) (West 2018)) in
isolation from the rest of the statute, then it applies to plaintiff's lawsuit. *Supra*
¶ 20. There are two problems with this premise. First, we do not read statutes this
way. Rather, statutes must be read as a whole. *Palm v. Holocker*, 2018 IL 123152,
¶ 21. Words and phrases should be construed in light of other relevant provisions
of the statute and must not be interpreted in isolation. *Prazen v. Shoop*, 2013 IL
115035, ¶ 21. Second, as the court noted in *Richards v. Vaca*, 2021 IL App (2d)

210270, ¶¶ 15-16, reading subsection (b)(2) in isolation is problematic, as it does not provide a right to commence a cause of action or a time limit for doing so. Thus, in order for the provision to make sense, it must be read in concert with the rest of subsection (b). *Id.* ¶¶ 16-17.

¶ 46 The majority reads section 13-209 as if the legislature had added the special representative provisions in a new subsection (d) that said that it applied to actions brought pursuant to the situations set forth in either subsection (b) or (c). But this is not what the legislature did. The legislature placed the special representative provisions *wholly within subsection (b)*. Subsection (b)(2) cannot be understood without reference to the rest of subsection (b). As the *Richards* court noted, subsection (b)(1) provides the right to commence an action and sets forth a time limit for doing so. Subsection (b)(2) does neither. *Id.* ¶ 15. However, subsection (b)(2) makes sense when subsection (b) is read in its entirety as setting forth complementary procedures:

> "[S]ubsection (b)(1) establishes a right to institute an action against the personal representative of an estate and imposes a time limitation (the time set by the applicable statute of limitations or within six months of the defendant's death, whichever occurs later). If an estate has been opened, the plaintiff may proceed against the personal representative. If no estate is open, subsection (b)(2) sets forth a procedure where the trial court can appoint someone to take the place of a personal representative—namely, a special representative." *Id.* ¶ 17.

Further, since the special representative appointed pursuant to subsection (b)(2) simply takes the place of the personal representative mentioned in subsection (b)(1), the time limit set forth in subsection (b)(1) applies equally to subsection (b)(2). *Id.* ¶ 19.

¶ 47 Clearly, the *Richards* court was correct that subsection (b) must be read as a whole. Subsection (b)(2) cannot be read in isolation because it is introduced by the colon at the end of subsection (b). Indeed, subsection (b)(2) begins with a lowercase letter because it is part of a complete sentence that begins at the beginning of subsection (b), runs through subsection (b)(1), and ends in subsection (b)(2). This is how subsection (b) reads from the beginning until the first period is encountered:

"If a person against whom an action may be brought dies before the expiration of the time limited for the commencement thereof, and the cause of action survives, and is not otherwise barred:

> (1) an action may be commenced against his or her personal representative after the expiration of the time limited for the commencement of the action, and within 6 months after the person's death;

> (2) if no petition has been filed for letters of office for the deceased's estate, the court, upon the motion of a person entitled to bring an action and after the notice to the party's heirs or legatees as the court directs and without opening an estate, may appoint a special representative for the deceased party for the purposes of defending the action." 735 ILCS 5/13-209(b) (West 2020).

The opening clause of subsection (b)(2) is "if no petition has been filed for letters of office for the deceased's estate." To know what "deceased's estate" this is talking about, we need to refer back to the opening clause of subsection (b): "[i]f a person against whom an action may be brought dies before the expiration of the time limited for the commencement thereof." And the "action" that subsection (b)(2) refers to must be the action that is allowed after expiration of the statute of limitations and within six months of the decedent's death, as this is the only one mentioned in the sentence. Thus, subsection (b)(2) simply cannot be read as standing "separate and apart" as the appellate court stated. 2022 IL App (1st) 200828, ¶ 28. It makes sense only when read in context with the rest of subsection (b). Moreover, because subsection (b)(2) is part of a complete sentence that runs through subsection (b)(1), there is simply no way to read subsection (b)(2) as applying to the circumstances set forth in subsection (c).

¶ 48      Thus, the majority is not correct that subsection (b)(2) was available to plaintiff. Subsection (b)(2) would have been available to plaintiff if she had been aware of defendant's death in time to take advantage of its provisions, but this was not the case. By the time plaintiff learned of defendant's death, the opportunity to comply with subsection (b)(2) had long passed. However, subsection (c) remained open to plaintiff. Plaintiff learned of defendant's death after the statute of limitations expired, and thus she still had two years to file an amended complaint against a personal representative. She did not do so, and therefore her complaint was properly

dismissed.

## II. *Relf v. Shatayeva*

¶ 50     The majority claims that defendant is reading this court's decision in *Relf v. Shatayeva*, 2013 IL 114925, "far too broadly" in arguing that the determination of whether subsection (b) or (c) applies turns on when the plaintiff learned of the defendant's death. *Supra* ¶ 26. I disagree. Defendant is reading it to mean exactly what it says. Indeed, federal courts called upon to apply *Relf* have read it exactly the same way. See, *e.g.*, *DeLeon-Reyes v. Guevara*, No. 18-cv-01028, 2019 WL 1200348, *2 n.3 (N.D. Ill. Mar. 14, 2019) (court reads *Relf* as meaning that subsection (b) applies when a plaintiff is aware of the defendant's death before expiration of the statute of limitations, while subsection (c) applies when the plaintiff is unaware of the defendant's death until after the statute of limitations has expired); *Stewart v. Evanston Insurance Co.*, No. 12 C 5023, 2015 WL 6407210, *18 (N.D. Ill. Oct. 21, 2015) (explaining that *Relf* stands for the proposition that "plaintiff's mental state" is the relevant factor for determining whether subsection (b) or (c) applies and therefore the plaintiff, who was not aware that the defendant was deceased when filing suit, could not move for appointment of a special representative; the plaintiff would have to open an estate and serve the personal representative). However, I believe that this court spoke too broadly in *Relf*. *Relf* states that the provisions of subsection (b) "presuppose that the plaintiff is aware of the defendant's death at the time he or she commences the action" (*Relf*, 2013 IL 114925, ¶ 27), thus setting up an interpretation that would make the provisions of subsections (b) and (c) mutually exclusive in any case where a plaintiff becomes aware of a defendant's death after the statute of limitations has run. However, the facts in *Relf* did not require this reading, as the plaintiff in that case was foreclosed from availing herself of subsection (b) because more than six months had passed from the time of the defendant's death. *Id.* ¶¶ 5, 8 (defendant passed away on April 25, 2008, and plaintiff moved for appointment of a special administrator on September 24, 2010). The same is true in the present case.

¶ 51     Under the facts in *Relf* and also in the present case, the plaintiffs were required to move for appointment of a personal representative under the provisions of subsection (c) and were only able to do so because they had not become aware of

the defendant's death before the running of the statute of limitations. There can be no doubt that awareness of the death after the statute of limitations expires is a condition for a plaintiff to preserve his or her cause of action under subsection (c). Where *Relf* spoke too broadly was in suggesting that the statute would preclude a plaintiff who does not become aware of a defendant's death until after the statute of limitations has run from availing himself or herself of the alternative provisions in subsection (b) if that plaintiff is able to effectuate one of those provisions within six months of the defendant's death. In other words, it is not the time of plaintiff's awareness of death in relation to the statute of limitations that made subsection (b) unavailable to the plaintiffs here and in *Relf*. Rather, the *Relf* plaintiff, as well as this plaintiff, could not proceed under subsection (b) because they were unable to do so within six months of the defendant's death. Thus, rather than subsection (b) "presupposing" that a plaintiff is aware of a death before the running of the statute of limitations, as *Relf* states, subsection (b) simply presupposes that a plaintiff is able to avail himself or herself of its provisions within its time limit, regardless of when he or she had become aware of the death. This court should take this opportunity to clarify the overbroad language it used in *Relf*.

¶ 52      Had the plaintiffs in *Relf* or in this case known of the death before the statute of limitations expired but in enough time to take advantage of the procedures of subsection (b) and had not done so, they would have no further recourse. However, because they were not aware of the death until after the statute of limitations had run, they had the option to avail themselves of the provisions of subsection (c), which would require a personal representative be appointed within two years of the expiration of the statute of limitations. Because neither plaintiff did this, instead improvidently seeking a special representative beyond the time limits of subsection (b), the plaintiffs' complaints were properly dismissed.

¶ 53      The majority claims that it would be "absurd, inconvenient, or unjust" to require plaintiff to move to appoint a personal representative under subsection (c) (*supra* ¶ 32), and the appellate court said that reading *Relf* to require this would be "extreme" (2022 IL App (1st) 200828, ¶¶ 37-38). But this is how all plaintiffs in this situation had to proceed before the legislature added the special representative provisions to the statute. All that reading the statute according to its plain language would mean is that the legislature had given another option to plaintiffs in one situation but not to those in another. Is it possible that the legislature intended for

- 16 -

the special representative provisions to apply in any situation in which an estate had not been open for the defendant and that placing those provisions only within subsection (b) was a matter of legislative oversight? Yes. But as this court just recently explained:

> " ' "Under the guise of construction, a court may not supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of language employed in the statute." ' *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 26 (2005) (quoting *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 309-10 (2001)). Nor may a court, under the guise of construction, 'correct' a perceived error or oversight by the legislature. *People v. Pullen*, 192 Ill. 2d 36, 42 (2000)." *People v. Grant*, 2022 IL 126824, ¶ 25.

¶ 54                           III. Subsection (b)(2)'s Time Limit

¶ 55        There are two possible time limits for naming a special representative under subsection (b)(2): either there is no time limit, or the time limit from subsection (b)(1) applies. As the majority notes, subsection (b)(2) does not state a time limit for appointing a special representative. *Supra* ¶ 30. The majority agrees with *Richards* that reading subsection (b)(2) to provide an indefinite period for a plaintiff to move to appoint a special representative is problematic. *Supra* ¶ 33. As *Richards* explained, however, subsection (b) can be read as a whole with two complementary parts, and under this reading the time limit set forth in subsection (b)(1) would also apply to subsection (b)(2). *Richards*, 2021 IL App (2d) 210270, ¶¶ 17-19.

¶ 56        The majority rejects this reading, holding that the time limit to name a special representative under subsection (b)(2) is the two-year time limit set forth in subsection (c). *Supra* ¶ 35. The majority explains that, if it were to agree with *Richards* that subsection (b)(1)'s time limit applies to subsection (b)(2), it would lead to a result that is "nonsensical and unjust" in this particular case because the statute of limitations expired more than six months after Donald Christopher's death. *Supra* ¶ 32. According to the majority, applying subsection (b)(1)'s time limit in this case would shorten the statute of limitations. *Supra* ¶ 32. To avoid this

- 17 -

alleged absurdity, the majority reads the time limit of subsection (c) into subsection (b)(2). *Supra* ¶ 33.

¶ 57 There are several problems with this part of the majority's analysis. First, the majority is not correct that applying subsection (b)(1)'s time limit would "shorten the limitations period." (Emphasis omitted.) *Supra* ¶ 32. It just would not extend it. Subsection (b)(1) provides that the cause of action may be commenced "after the expiration of the time limited for the commencement of the action, and within six months after the person's death." 735 ILCS 5/13-209(b)(1) (West 2020). The effect of this language is to give the plaintiff until the end of the limitations period or six months after the defendant's death, whichever comes later. The closer that the defendant dies to the end of the limitations period, the longer the limitations period is extended. Here, because Christopher died more than six months prior to expiration of the limitations period, the statute of limitations would not be extended.

¶ 58 Second, the majority describes subsections (b)(2) and (c) as two different alternatives that are open to plaintiff. According to the majority, subsection (b)(2) applies to plaintiff's situation (*supra* ¶ 21), but so does subsection (c) (*supra* ¶ 22). The majority notes that both subsections contain the word "may" and therefore a plaintiff is free to choose to proceed under either subsection. *Supra* ¶ 22. But the majority then holds that, if the plaintiff chooses the subsection (b)(2) option, he or she still gets the benefit of subsection (c)'s two-year time limit, even though no such time limit appears anywhere in subsection (b). *Supra* ¶ 33. There is simply no way to read subsection (b)(2) as providing for a two-year time limit. Such a time limit appears nowhere in subsection (b). The only two-year time limit mentioned in the statute is in subsection (c)(4), where it is stated that "[i]n no event can a party commence an action *under this subsection (c)* unless a personal representative is appointed and an amended complaint filed within 2 years of the time limited for the commencement of the original action." (Emphasis added.) 735 ILCS 5/13-209(c)(4) (West 2020). By its plain language, the two-year time limit applies only to actions brought under subsection (c), and the majority concedes that this is a separate path from subsection (b)(2). *Supra* ¶ 22. The majority is not *interpreting* subsection (b)(2) by stating that it provides a two-year time limit. It is adding language to subsection (b), and the majority concedes that we may not do this. *Supra* ¶ 27.

¶ 59 Finally, the majority leaves the law unclear as to when the two-year time limit would apply. On the one hand, the majority states that "the time limit set forth in subsection (c) applies to a plaintiff proceeding under subsection (b)(2) *who has learned of the defendant's death after the limitations period has run*." (Emphasis added.) *Supra* ¶ 33. On the other hand, the majority states that "[i]t was error for the appellate court in *Richards* to impose the time limitation from subsection (b)(1) into subsection (b)(2)." *Supra* ¶ 31. But *Richards* was a case in which the plaintiff knew of the defendant's death *before the statute of limitations expired*. See *Richards*, 2021 IL App (2d) 210270, ¶ 4. If *Richards* was wrong to apply the six-month time limit from subsection (b)(1), then the majority is necessarily saying that a two-year time limit applies to subsection (b)(2) regardless of when the plaintiff learns of the defendant's death. But the majority fails to explain what justification there would be for giving plaintiffs who were aware of the defendant's death before the statute of limitations expired an additional two years to bring an action against a special representative.

¶ 60                                IV. Conclusion

¶ 61 In sum, the plain language of subsection (b)(2), read in the context of the statute as a whole, confirms that its provisions are not applicable here. The majority's reading of the statute is contrary to the statute's plain language. The majority further errs in reading a two-year time limit into subsection (b)(2). It is simply not possible to read subsection (b) as providing a two-year time limit. Here, the only option available to plaintiff, who did not learn of the defendant's death until after the statute of limitations expired and after it was too late to comply with subsection (b)(2), was to proceed under subsection (c). I would thus reverse the appellate court's decision and affirm the circuit court's decision. In doing so, I would encourage the legislature to review the statute and determine whether provisions for the appointment of special representatives should be added to subsection (c).

¶ 62 JUSTICE OVERSTREET joins in this dissent.

¶ 63 JUSTICE HOLDER WHITE took no part in the consideration or decision of this case.